Reed, J.,
delivered the opinion of the court.
Taking up the errors assigned in the same order as discussed by counsel, the third is the first to be considered, viz.: *291 That the verdict and judgment sustaining the attachment were against the weight of evidence, and unsupported by the evidence. Ordinarily the vérdict of a jury will not be disturbed where the testimony is conflicting, and there is sufficient evidence to sustain the verdict.
The only question to be determined was that of fraud. It has been frequently said by the courts that fraud is a question of fact to be determined by the juty, by all the circumstances of the case ; but it would perhaps be safer to say that it is a mixed question of law and fact. “ It is the judgment of law on facts and intents.” Waite on Fraud. Con., 22; Pittibone v. Stevens, 15 Conn. 26; Sturdevant v. Ballard, 9 John, (N. Y.) 342; Ottey v. Manning, 9 East, 64.
“ Fraud is always a question of fact with reference to the intention of the grantor. * * * Every case depends upon its circumstances, and is to be carefully scrutinized, but the vital question is always, the good faith of the transaction. There is no other test.” Swayne, J. in Lloyd v. Fulton, 91 U. S. 485; Humes v. Scruggs, 94 U. S. 22.
Creditors have an interest in the property of the debtor. It has been called an equitable interest; it is the fund to which they look for the payment of the debts, and the law makes it so. Any alienation of property for the purpose of hindering, delaying or defeating creditors in subjecting the property to the payment of the debts, is fraudulent. So long as a man retains the control and possession of his property, whether he is solvent or insolvent, he has the legal right to dispose of his property, and if he does so honestly and honestly applies the proceeds in the discharge of his indebtedness, he has full right to do so. But any transfer to put the property beyond the reach of creditors or to reserve benefits to himself is fraudulent; hence the question, as before said, is the intention, and this must be determined from all the circumstances.
In the management of the property and the application of it by the parties preceding the assignment, we find no evidence whatever of misapplication or fraudulent disposition. *292 It is not contended in argument that there was not a Iona fide use of the assets in the payment of legitimate indebtedness, nor is there any evidence or claim that the debtors were to have any resulting benefits from any of the transactions. So long as a debtor retains control of his property he can legally prefer one creditor to another. Even if insolvent, he can pay to one the entire indebtedness, to another nothing, and such discrimination is legal. A careful review of all the testimony fails to show that a dollar was misapplied; it only shows that some were paid and others were not; that the debtors had exercised the legal right of election and discrimination, consequently, the first clause of the paragraph upon which the attachment was based, viz.: “ That defendants had fraudulently conveyed, transferred and assigned their property ” * * * so as to hinder and delay creditors, was absolutely unsustained by any evidence.
The following is sec. 186, Mill’s Ann. Stat.: “No assignment shall be invalid because of misappropriation of the property of the debtor by him, prior to the assignment, but the assignee may recover such property, if so misappropriated in fraud of this act. But nothing in this act contained shall invalidate any conveyance or mortgage of property, real or personal, by the debtor before the assignment, made in good faith, for a valid and valuable consideration.”
In attempted support of the second clause of the affidavit for an attachment, viz.: “ are about to fraudulently transfer, convey and assign their property and effects so as to hinder or delay their creditors,” the evidence was of an intention to make a general assignment for the benefit of all creditors, which was done the morning after the suing out of the attachment in this case. A general assignment by a debtor of all his property for the benefit of all his creditors is not a fraudulent disposition of property furnishing ground for an attachment when it is made honestly and bona fide. To vitiate it there must be fraudulent intention followed by irregular and fraudulent disposition of the property or a failure to convey all. In other words, there must be either a reser *293 vation of property or such a disposition of it that the proceeds will inure in some way to the benefit of the assignor. If made fully and in good faith, it is not only a proper and legal application of assets, but an equitable one, preventing the sequestration and sacrifice of the estate bjr a few at the expense of the many, and although it may operate to hinder and delay creditors, it is no ground for attachment. The fundamental principles are that “ the debtor must devote all his property absolutely to the payment of his debts; reserve no control for himself.” Riggs v. Murray, 2 John. Ch. (N. Y.) 565; “ Must provide for no benefit to himself, other than what may result from the payment of his debts; impose no condition upon the right of the creditors to participate in .the fund; authorize no delay upon the part of the trustee.” Sutkins v. Aird, 6 Wall., 79; Oliver Lee & Company's Bank v. Talcott, 19 N. Y., 148.
A very careful examination of all the evidence — and a very wide range was properly allowed — fails to show that any of the rules or controlling canons were violated, and that there was not a full, complete and absolute transfer of all the property for the benefit of all creditors. We can find no evidence upon which the verdict could be based, and conclude that it must have been the result of bias or prejudice on the part of the jury, or that the jury was misled in regard to the law, b3r the instructions of the court.
It is in evidence that on the day this action was commenced and the day preceding the assignment, Mr. Hunter, managing partner of the firm, in conversation with the husband of appellee, said that if he could not get money they would have to go to the wall. “That he had considerable ditch stock and he would dispose of it, and he would have from ten to twenty thousand dollars left, and I need not be alarmed about my money.” Again, “ he said he would have $15,000 or $20,000 left after he settled up his business. This was the only evidence in the case upon which any question of fraud was attempted to be predicated, and the only basis for the instructions of the court submitting the question of fraud *294 to the jury. It is claimed that this expression of a hope, opinion or expectation of having abalance left after full payment of debts, was a badge of fraud and the question was submitted to the jury by the instructions.
The instruction on which the seventh assignment of error is based is faulty. It is in conflict with the statute which provides “ That any person may make a general assignment of all his property for the benefit of all his creditors.” The right is neither modified nor restricted, nor is the question of sufficiency, or surplus, or inadequacy, made a factor. The right to make the assignment is absolute, regardless of such considerations. As before stated, it is only necessary that it should be full and complete, a Iona fide conveyance of all the debtor’s property for the benefit of all his creditors, these being the only requisites or tests of validity. In order to vitiate the assignment, it must be found lacking in one of the essentials. The expressed expectation of a remaining surplus could in no way affect it, nor could the desire to protect it. A man can make a legal assignment although his assets may be in value four times the amount of indebtedness. Such being the law, it was error to submit to the jury the question of motive in regard to a supposed surplus. The language is also unfortunate. It is, “ believed at the time the assignment was made that there was enough or more than enough property in said firm, to pay all indebtedness, and if judiciously managed, there would be a surplus left after paying all debts, and that one of the moving reasons for the making of such assignment was the protection of such surplus. Such facts in connection with the assignment are a badge of fraud and indicative of an intent to convey property, so as to delay, hinder or defraud creditors.” This narrows and restricts the law, introduces a new element, and not only submits a question of motive, but clearly indicates that the assignment may be invalid because coupled with the motive. T can find no authority where the expectation of a surplus after the full payment of debts, is declared to be fraudulent or a badge of fraud. “ It can seldom be the duty of the court to instruct *295 the jury that a single fact will warrant the jury in finding fraud. All the facts surrounding the transaction must be taken into account collectively.” Sleeper v. Chapman, 121 Mass., 404.
For the same reasons the modification and addition to the instruction assigned in the ninth assignment of error is erroneous.
There was no evidence upon which the instructions in regard to fraud could be predicated, hence the giving of them was erroneous. Allen v. Eldridge, 1 Colo. 288; Thatcher v. Kaucher, 2 Colo. 699; Lawson v. Van Auken, 6 Colo. 52; Burlock v. Cross, 16 Colo. 162.
The finding and judgment sustaining the attachment must be reversed.

Reversed.